Evidence of obscene language, used by defendant to a lady when he had a pistol drawn on her, being part of the transaction, is admissible as res gestæ on a prosecution for carrying a pistol.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 805–818; Dec. Dig. § 364.*]

Appeal from Young County Court; E. W. Fry, Judge.

Noble Brogdon was convicted of carrying a pistol, and appeals. Affirmed.

C. W. Johnson, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

HARPER, J. Appellant was prosecuted under complaint and information, charged with unlawfully carrying a pistol. Being tried, he was convicted, and his punishment assessed at 40 days imprisonment in the county jail and a fine of $100.

[1] The Assistant Attorney General has filed a motion to strike out the statement of facts, because not filed within the time allowed by law. The motion is well taken, and is hereby sustained. Acts of 30th Legislature [1st Ex. Sess.] p. 446.

[2] It appears from the record that the county attorney prepared and delivered to the county clerk an information and complaint in this cause on the 13th day of March, 1911. The county clerk neglected to place his file marks on both the complaint and information, and the appellant filed a motion in arrest of the judgment because the information and complaint were neither marked filed at the time of the announcement for trial. It appears from the record that this objection was first made after the jury was impaneled, when the county attorney read the information to the jury. The county attorney and clerk both testified that the information and complaint had been delivered to the clerk on the 13th day of March for filing, and had been in his possession and with the papers from that date until the 25th day of March, the day of the trial. Permission was granted by the court for the clerk to place the correct file mark on the papers, and this was done before proceeding with the trial of the case. A delivery of the papers to the clerk was a filing thereof in law. The writing is mere evidence of the filing, and the court committed no error in permitting the clerk to note on the papers the correct date of the filing. The appellant did not contest the fact that the papers were delivered to the clerk on the 13th of March by the county attorney, 12 days before the trial, but insists that the clerk should not be permitted to indorse the file marks thereon without his consent. The complaint and information were "filed" at the time of delivery to the clerk and same were placed with the papers, and the court did not err in overruling the motion in

arrest of judgment. Starbeck v. State, 53 Tex. Cr. R. 192, 109 S. W. 162.

[3] In another bill appellant complains that the court failed to charge the jury on circumstantial evidence. In this there was no error, as there was positive testimony that the appellant had a pistol on the occasion alleged.

[4] In another bill appellant complains that a witness was permitted to testify that, at the time witness says he pulled a pistol and threw it in their face, defendant said: "Kiss my God d—n ass! Suck my p—k! God d—n you!" This language was addressed to a young lady, if the witness is to be believed, and was uttered while he had a pistol drawn on her. This was a part of the transaction, and was admissible as res gestæ. It may have, as appellant insists, caused the jury to assess a very high penalty, and it should have done so if the jury believed the testimony.

This disposes of all the grounds in the motion except that the testimony will not support the judgment. While we cannot consider the testimony, as it was not filed within the time permitted by law, yet, if we did so, the evidence would show that the witness Clayton Lee testified: "Defendant run around in front of us and grabbed Miss Dony Criss by the shoulder and asked her, 'What in the h—l she meant and what right had she to treat him like she did?' Miss Criss replied: 'She had a right because he (defendant) was drunk.'" Witness says defendant "pulled a pistol out of his pocket, and pointed it in our face," and then used the language hereinbefore referred to.

The judgment is affirmed.

BADOUH v. ST. LOUIS, B. & M. RY. CO.

(Court of Civil Appeals of Texas. San Antonio. Oct. 18, 1911.)

EMINENT DOMAIN (§ 119*)—TRACKS IN STREETS—NATURE OF USE—ADJOINING PROPERTY OWNER—RIGHTS.

Where, prior to plaintiff's acquisition of residence property, defendant's Y track in an adjoining street had not been used for certain operating purposes to which it was afterwards subjected, and the additional use materially increased the use of the Y, so as to depreciate the value of plaintiff's property, plaintiff was entitled to recover therefor, under Const. art. 1, § 17, prohibiting the taking, except by due course of the law of the land, of property without ample compensation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 304–314; Dec. Dig. § 119.*]

Appeal from District Court, Matagorda County; Wells Thompson, Judge.

Action by E. M. Badouh against the St. Louis, Brownsville & Mexico Railway Company. Judgment for defendant, and plaintiff appeals. Reversed.

---

Gaines & Corbett, for appellant. Claude Pollard, Holland & Krause, and C. M. Robards, for appellee.

JAMES, C. J. Plaintiff, Badouh, alleged in substance that on March 15, 1909, he owned certain lots in Bay City, fronting 150 feet on Avenue J and 140 feet on Second street, erected substantial improvements thereon, and used same for his homestead; that said streets are public highways in an incorporated town; that when plaintiff became the owner of the property, defendant was operating its trains on First street by authority of an ordinance that restricted defendant to the use of a single track from the east side of Avenue H to Avenue I; that defendant had a Y track connecting with its roadbed on First street, and extending across and partly along Avenue I, and connecting with the track of the Gulf, Colorado & Sante Fé Railway Company on or near Avenue J; that, under the franchise granted defendant by said city, said roadbed from Avenue H east and said Y track was to be used solely as a single track road; that the yards of defendant be west of Avenue H; that, from the granting of the franchise and construction of its tracks, that portion thereof lying along First street east of Avenue H was used only for its main line trains, and the Y track was used only for transferring cars from its track to the Gulf, Colorado & Santa Fé tracks, and was not used as yard tracks, house tracks, or for general purposes; that on or about July 25, 1909, defendant constructed an additional track along First street, and extended it from the west side of Avenue H, across said Avenue H, and across Avenue I, connecting with the Y track on the north side of its said railroad track; that since then defendant has constantly used the Y track extending from a point west of Avenue H to a point on Avenue J at or near its intersection with Second street, and from a point on Avenue H to a point on Avenue J at or near its intersection with Rugely street; that the switch connecting the northern leg of the Y with the Gulf, Colorado & Santa Fé track stands opposite or near the residence of plaintiff; that beginning on or about July 25, 1909, defendant operated other and additional long and heavy freight trains over its said line, arriving at Bay City during the night both from the east and the west; that, disregarding plaintiff's rights, defendant, every night somewhere between 9 p. m. and 6 a. m., used the Y track and the additional side track for switching purposes in making up its trains; that long and heavy freight trains are forced over said Y track, causing vibration to plaintiff's house, and making deafening noises, rendering it impossible for plaintiff's family to sleep; that long strings of box cars are left standing from day to day on said Y track immediately adjoining plaintiff's premises on the south side thereof, thus interfering with the free use of the streets and avenues for ingress and egress, and obstructing the passage of air from the south, which is the prevailing air in summer; that frequently immigrant cars, containing animals as well as people, are left standing on said track near plaintiff's home; that odors arise from said cars and from the use made of them that are intolerable, and that oil tanks or tank cars are frequently left standing there; but beginning about 9 p. m. defendant begins to switch its trains up and down its main line and over and across the Y track and side tracks, and continues such use until morning, and in so doing the whistling of engines, jamming of cars, and the "hollering" of the train operatives render it impossible for plaintiff or the members of his family to sleep; and that such conduct greatly depreciates the market value of plaintiff's property.

Plaintiff alleged that prior to such use of said tracks, spurs, and Y—that is, prior to July 25, 1909—they were used only for transferring cars from one railway to the other, and were never used as yardage or for switching purposes; that at such time plaintiff's property had a ready market value of $3,000 and has been diminished in value by the sum of $1,500 by reason of the additional uses and burdens, other than those contemplated by plaintiff at the time he acquired the property. The prayer was for the sum of $1,500.

Besides demurrers, upon which no question is made here, defendant pleaded general denial, and a plea styled "contributory negligence," to the effect that plaintiff purchased the property with full knowledge of its location in reference to the Y and other tracks, and with full knowledge of the usual and ordinary uses to which said tracks are put. At the trial the case took this course as shown by the judgment:

After plaintiff had submitted his "record" evidence, and himself and another witness had testified, the court announced that he was convinced that plaintiff could show no cause of action, and thereupon withdrew the case from the jury, discharged the jury, and dismissed the case, to which action plaintiff excepted, and demanded the right to proceed with his testimony, "when it was agreed by and between counsel for the plaintiff and the defendant that the witnesses (naming five) would each and all testify to facts that show that the plaintiff's property has been depreciated in value in the manner alleged in plaintiff's petition, whereupon the court declined to further permit the plaintiff to proceed with his cause of action, and entered the order dismissing the case."

Plaintiff testified that he acquired the property on March 1, 1909, and since then had improved it; that when he bought it defendant was not using the Y track to any extent for switching purposes, but began to use

it for general purposes after a storm which occurred in July, 1909, and has so used it ever since; that the switch that connects the Gulf, Colorado & Santa Fé Railway with the Y track is northeast from plaintiff's corner, and since July 21, 1909, defendant has used the Y track for switching purposes and for operating cars on it, and has continuously kept this track in use day and night; that they bring in homeseekers' cars every two weeks, and switch the cars containing 40 or 50 people right in front of his house, staying sometimes one day, sometimes two or three, and making a regular privy in front of his home; that defendant would leave strings of box cars standing in front of his house; that these cars were continually jammed together on this track, making noises that made it impossible to sleep; that there had been no changes in the track since he acquired the property in question; and that he began to improve the property just before the storm, and finished same in August, 1909.

W. R. Lewis testified he owned lots on the Y track, and lived there in 1909; that in 1908 he lived in Brownsville, and when he came back from there in January the railroad was using the Y track for switching purposes, and to transfer stuff over it, leaving cars on it; that every night they stand right in front of his house; that they make up freight trains over this Y, do their freight switching, and all of that kind of things over it. Upon a further question to this witness as to the use of the track interfering with the use of the property, the court interposed and withdrew the case from the jury as before stated, assigning as his reason that, plaintiff having purchased the property after the Y track was built, he was bound to take notice of such track, and that subsequently increased burdens upon the track would not authorize recovery.

The testimony introduced and offered by plaintiff showed that previous to his acquisition of the property the Y track in question had not been used for certain operating purposes to which it was afterwards subjected; that such purposes materially changed and increased the uses of said Y track, and such increased uses were of a nature calculated to and did affect the value of plaintiff's property. That such uses, producing the effect of depreciating the value of adjacent property, give rise to a cause of action for damages for the lessened value, in view of article 1, § 17, of the Constitution, is settled by the decision in Hutcheson v. Railway, 102 Tex. 471, 119 S. W. 85, and the cases there referred to. We think the court erred in the reason assigned for its action. We think, also, that no other valid reason existed for taking the case from the jury and dismissing it.

Reversed and remanded.